IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT J. LAWN, individually :
and on behalf of all others :
similarly situated, :
 :
           Plaintiff, : CIVIL ACTION
 :
  v. : No. 10-cv-1196
 :
ENHANCED SERVICE BILLING, INC., :
and INTERNET BUSINESS ADVISORS, :
INC., :
 :
           Defendants. :

**MEMORANDUM AND ORDER**

**Joyner, J.**                                                             **July 8, 2010**

Before the Court is Defendant Internet Business Advisors Inc.'s Motion to Dismiss or in the Alternative, for Summary Judgement (Doc. No. 11). For the reasons set forth in this Memorandum, Defendant's Motion is granted in part and denied in part.

### **Background**[1]

This dispute arises out of charges placed on Plaintiff Robert J. Lawn's Verizon telephone bill by Defendants Enhanced Service Billing, Inc. ("ESBI") and Internet Business Advisors,

---

[1] In line with a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

1

Inc. ("IBA").  Defendant ESBI is a "billing aggregator" that arranges for local telephone companies to collect payments on behalf of third-party vendors and then forwards those payments to the vendors, collecting a commission on all transactions. Defendant IBA provides a web hosting service and employs Defendant ESBI to collect its fees.  Beginning in August of 2008, ESBI placed a monthly charge of $21.15 ($19.95 plus $1.20 sales tax) on Plaintiff's Verizon telephone bill at the behest of IBA. Plaintiff paid this monthly charge through September of 2009, at which point Plaintiff contacted Verizon to inquire about the additional charges.  Verizon then advised Plaintiff to contact Defendant IBA, which Plaintiff did to dispute the charges.  IBA agreed to refund two months of charges but refused to issue refunds dating back to August of 2008.  IBA issued a refund of $42.30 on Plaintiff's October bill, but also charged Plaintiff $21.15 for an additional month of service.  Plaintiff contends that he never ordered nor received any services from Defendants. Defendants, however, contend that Plaintiff's wife, Kimberly Lawn, ordered the services using an online authorization form.

In Count I Plaintiff charges Defendants with conversion for the unauthorized taking of his money.  Count II charges Defendants with violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law for its deceptive billing practices. Count III seeks to recover the funds paid to Defendants under a

theory of Unjust Enrichment.  Finally, Count IV asks for Injunctive Relief.

## **Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if the plaintiff has failed to state a claim on which relief can be granted.  In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 283 (1986); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Additionally, under Federal Rule of Civil Procedure 9(b), pleadings alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires the plaintiff to go beyond the minimal pleading requirements of Federal Rule of Civil Procedure 8(a) when pleading fraud.  Under Rule 9(b) the plaintiff must plead either the date, place, or time of the fraud or give precision and some measure of substantiation to his allegations of fraud through alternative means.  <u>Lum v. Bank of America</u>, 361 F.3d 217,

224 (3d Cir. 2004).

## Discussion

**Voluntary Payment Rule**

Before addressing Plaintiff's claims, we must first examine Defendant's contention that Plaintiff's suit is barred by the Voluntary Payment Rule. The Voluntary Payment Rule is a common law doctrine that precludes actions from being brought to recover money that was voluntarily paid. In order to implicate the Voluntary Payment Rule, however, the payment must truly have been voluntary and made with an unadulterated understanding of all of the elements of the payment. Ochiuto v. Prudential Ins. Co., 52 A.2d 228, 230 (Pa. 1947).

The Voluntary Payment Rule does not preclude any of Plaintiff's claims in this case. Plaintiff's Complaint alleges that payments were made to Defendants because unauthorized and misleading charges were placed on Plaintiff's telephone bill. At this stage of the proceedings, the depth of Plaintiff's knowledge regarding the Verizon bill is unclear. Looking at Plaintiff's Verizon bill, the exact nature of Defendants' charges are not clear until the fifth page of a six-page bill. On the first page, which states the total balance owed by Plaintiff, neither Defendant is mentioned by name; rather, the bill has two specific charges from Verizon and then a third charge from "other providers." Further, before getting to page five, Plaintiff

would have to read page two, which contains various means of contacting Verizon but no contact information for Defendants, and pages three and four, which contain details and charges relating to Plaintiff's phone use but not any information on Defendants' services or fees.  In fact, we have found no mention of Defendant IBA anywhere on Plaintiff's Verizon bill and it is not until the fifth page that Defendant ESBI is mentioned by name.  Under these circumstances, it is plausible that the payment to Defendants for IBA's web hosting service was not truly voluntary in the sense necessary to implicate the Voluntary Payment Rule.  Plaintiff very well might not have fully understood to whom he was making payments, given that Defendant ESBI's name is not mentioned until page five, or for what services he was being charged, given that Defendant IBA's name never appears on the bill.  Under these circumstances, we cannot conclude that Plaintiff had an unadulterated understanding of his payments to Defendants and the Voluntary Payment Rule cannot provide the ground for dismissing this action.

**Count I**

Turning to Plaintiff's Complaint, Count I is a claim for conversion.  "A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."  Stevenson v. Econ. Bank of Ambridge,

5

197 A.2d 721, 726 (Pa. 1964) (citing Gottesfeld v. Mech. & Traders Ins. Co., 173 A.2d 763 (Pa. Super. Ct. 1961)). Under Pennsylvania law, money is considered chattel and may be the subject of conversion. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987).

Plaintiff's Complaint fails to state a claim for conversion. As stated above, conversion requires that chattel be taken without the owner's consent or lawful justification. In this case, however, Plaintiff willingly turned over his chattel and this element of conversion cannot be satisfied. We understand that Plaintiff alleges fraudulent and misleading behavior on the part of Defendants, but these allegations do not negate the fact that Plaintiff consented to the transfer of the chattel. Even though Plaintiff may have lacked complete knowledge of to whom the money was ultimately going, the fact that the money was parted with willingly prevents Defendant's actions from being classified as conversion. Plaintiff's claim for conversion, therefore, fails, and must be dismissed.

**Count II**

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is a broad statute that prohibits a variety of misleading or fraudulent corporate acts, including "engaging in any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73

6

Pa. Stat. Ann. § 201-2(4)(xxi) (West 1976). In order to bring a claim under the UTPCPL the plaintiff must allege losses that stem primarily from a "personal, family, or household" purpose. Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 240 (3d Cir. 2002); W. Coast Franchising Co. v. WCV Corp., 30 F. Supp. 2d 498, 500 (E.D. Pa. 1998). Although the Pennsylvania Supreme Court has yet to definitively rule on whether a plaintiff must prove all of the elements of common law fraud in order to sustain a claim under the UTPCPL, federal courts have found that "if a plaintiff alleges deceptive conduct, a plaintiff need not allege the elements of common law fraud, but conversely, must do so if a plaintiff alleges fraudulent conduct." E.g., Seldon v. Home Loan Servs. Inc., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009).

Defendant asserts that Plaintiff has failed to plead any of these claims with the specificity required by Federal Rule of Civil Procedure 9(b). Further, Defendant also contends that dismissal is proper because the UTPCPL only protects private consumers and Plaintiff never alleged that the account in question was for personal use. Defendant IBA contends that Plaintiff was fully aware of the fact that IBA had placed charges on Plaintiff's Verizon bill and that any alleged misrepresentation was made to Verizon and not Plaintiff, leaving Plaintiff without a claim for fraud. Plaintiff, on the other hand, contends that Defendants engaged in deceptive practices and

7

fraudlent behavior that are sufficient to constitute a violation of the UTPCPL.

Rule 9(b)

With regard to Defendant's claim that Plaintiff has not satisfied Federal Rule of Civil Procedure 9(b), we find that Plaintiff's claim addresses the allegedly fraudulent conduct with sufficient particularity.  Plaintiff's claim alleges that, from August 2008 through September 2009, Defendants fraudulently and without authorization placed charges onto Plaintiff's Verizon bill.  This clearly puts Defendants on notice as to the date of the fraud.  Further, Plaintiff's claims do not appear to be fruitless, solely a vehicle to obtain damaging information regarding Defendants during discovery, or brought seeking to harass Defendants and damage their reputation.  We find, therefore, that Plaintiff has pled with sufficient particularity to satisfy Rule 9(b) in this case.

Personal, Family, or Household Purposes

Turning to Plaintiff's UTPCPL claim itself, Defendant first argues that Plaintiff does not allege that the telephone number in question was used primarily for a "personal, family, or household" purpose, and, therefore, lacks standing under the UTPCPL.  73 Pa. Stat. Ann. § 201-9.2(a).  In support of this assertion Defendant cites Balderston, 285 F.3d at 242, and West Coast Franchising Co., 30 F. Supp. 2d at 500.  In both of these

cases, however, the court found that there was no "personal, family, or household" purpose, but did not dismiss the case simply because the plaintiff failed to specifically allege such a purpose in his complaint. At this stage of the proceedings we must simply look to whether it is plausible that the service was used for such a purpose given the context of the Complaint. In this case, Plaintiff denies ever having ordered or received Defendant's services. Plaintiff, however, resides at 1135 Stonehouse Road, Lower Gwynedd, Pennsylvania, and this is also the billing address for the Verizon account at the heart of this dispute. Although the focus here is on whether the services provided by IBA were used for personal, family, or household purposes, the fact that they were billed and provided to Plaintiff at his place of residence makes it plausible that Plaintiff used them primarily for such purposes. A motion to dismiss on these grounds, therefore, must be denied.

Claims Under the UTPCPL

Defendant argues that Plaintiff must prove all of the elements of common law fraud for a claim under the UTPCPL, but does not contest Plaintiff's ability to establish the elements of fraud other than misrepresentation. Specifically on this point, Defendant argues that because no misrepresentations were made to Plaintiff himself, he fails to state a claim for fraud. As discussed above, however, Plaintiff is not obligated to establish

9

each element of common law fraud, so long as he has alleged deceptive conduct.  Regardless, Plaintiff argues that he has established all of the elements of common law fraud.  This cause of action requires "1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance." Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005) (citing Viguers v. Philip Morris USA, Inc., 837 A.2d 534 (Pa. Super. Ct. 2003)).

Plaintiff can move forward with his claim that Defendants acted fraudulently in violation of the UTPCPL.  As noted above, the point of contention on this claim is whether Plaintiff has pled an appropriate misrepresentation.  Pennsylvania law regarding a misrepresentation to a third party has yet to be clearly defined.  It is clear that the fact that the misrepresentation was made to a third party does not automatically negate a claim for fraud. Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris Inc., 171 F.3d 912, 935 (3d Cir. 1999) (citing In re Orthopedic Bone Screw Liab. Litig., 159 F.3d 817 (3d Cir. 1998)).  Additionally, the Third Circuit has held that "a misrepresentation claim is not necessarily precluded when the alleged injury arises from a third party's (and not the plaintiff's) reliance on defendant's

misrepresentations." Steamfitters Local, 171 F.3d at 935. Instead, regardless of to whom the misrepresentation was made, the focus is on whether the plaintiff himself relied on the misrepresentation and was injured by it. Id. at 935. We decline to dismiss this Complaint solely on the grounds that the alleged fraudulent behavior was perpetrated against Plaintiff through a proxy. The critical element is that the fraud was committed against Plaintiff and this is not negated merely because the representation of the fraud was made to Verizon rather than Plaintiff. Plaintiff has alleged that he relied on the misrepresentation in paying the bill, and that he was injured by spending money on a service he neither ordered nor was provided. This is sufficient to establish an actionable misrepresentation.

Defendant further contends that it did not commit any deceptive practices because the monthly charges were clearly provided to Plaintiff. As discussed above, the charges do not appear to be as clear as Defendant claims. There is no mention of Defendants ESBI or IBA until the fifth page of the Verizon bill, and the first page, which lists the total amount due, only refers to Defendants ESBI and IBA as "other providers." Further, Defendant IBA does not appear to be mentioned anywhere on the bill. Under these circumstances, even if Defendant's conduct did not constitute common law fraud, it could still constitute a

deceptive practice that falls within the purview of the UTPCPL. Defendant's motion to dismiss, therefore, must be denied.

**Count III**

Plaintiff's Complaint fails to state a claim for unjust enrichment. Unjust enrichment claims have historically been invoked following unconsummated or void contracts. Steamfitters Local, 171 F.3d at 936. "Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in *quantum meruit*." Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (citing Chesney v. Stevens, 644 A.2d 1240 (Pa. Super. Ct. 1994)).

In the present case, Plaintiff has failed to allege a scenario in which it would be appropriate to imply a contract. There was no broken contract between Plaintiff and Defendants and no benefit conferred to Defendants stemming from any void or unconsummated contract. Rather, Plaintiff's unjust enrichment claim rests solely on the claim that Defendants unjustly obtained Plaintiff's money in exchange for a service that Plaintiff did not request. Plaintiff is essentially asking this Court to extend the unjust enrichment doctrine to any and all tort claims involving the "unjust" taking of another's chattel. We are

unwilling to take this step and make the unjust enrichment doctrine a stand-in for conversion. Under these circumstances, the proper cause of action is one for conversion, which, for the reasons discussed above, is inappropriate in this case. Plaintiff's unjust enrichment claim, therefore, must be dismissed.

**Count IV**

Finally, Defendant has requested that this Court dismiss Plaintiff's request for injunctive relief. Plaintiff is not seeking a preliminary injunction at this time, but instead lists injunctive relief as one of the remedies he seeks. This Court will address the issue of remedies, including the possibility of injunctive relief, if there is a finding of liability. We see no need to limit the potential remedies available to Plaintiff at this time, however, and will not dismiss Plaintiff's claim for injunctive relief.

**Summary Judgment**

Defendant also requests that summary judgment be granted on the grounds that Kimberley Lawn granted IBA authorization to place charges on the Verizon bill and on the grounds that Plaintiff's phone number was used primarily for business purposes. Federal courts have found that it would be unfair and improper to grant a motion for summary judgment in situations where the parties have not had sufficient time to gather and

13

present evidence to support or oppose such a motion. See Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp 331, 335 (E.D. Pa. 1994). In the present case, while Defendant has attached certain documents to its Motion to Dismiss and asked this Court to consider the motion as one for summary judgment, we feel that it would be unfair to consider such a motion before granting Plaintiff an opportunity for discovery. Given the factual disputes between the parties, particularly the issue of Kimberley Lawn's online registration, it would be unfair to consider a motion for summary judgment before both parties are granted an opportunity for discovery. We will, therefore, decline to consider Defendant's Motion for Summary Judgment at this time, and Defendant may refile a Motion for Summary Judgment at a later stage in these proceedings.

## Conclusion

For the reasons stated above, the Voluntary Payment Rule does not preclude Plaintiff's Complaint. Plaintiff, however, has failed to state a claim for conversion or unjust enrichment and Defendant's Motion to Dismiss is granted on Counts I and III. On the other hand, Defendant's Motion to Dismiss Count II for a violation of the UTPCPL is denied, as Plaintiff has stated a claim for fraudulent and deceptive practices, and we will decline to dismiss Count IV for Injunctive Relief at this time. Finally,

Defendant's Motion for Summary Judgment is premature, and is also denied.